Ruthie Walls; Jennifer Reynolds, as next friend of Sadie Annabella Reynolds; Chandra Williams Davis, as Next Friend of Giselle Davis; Colton Gilbert; Arkansas State Conference NAACP

*Plaintiffs - Appellees*

v.

Sarah Sanders, in her official capacity as Governor of the State of Arkansas

*Defendant*

Jacob Oliva, in his official capacity as Secretary of the Arkansas Department of Education, and individually; Sarah Moore, in her official capacity as Member of the Arkansas State Board of Education; Kathy McFetridge-Rollins, in her official capacity as Member of the Arkansas State Board of Education; Adrienne Woods, in her official capacity as Member of the Arkansas State Board of Education; Randy Henderson, in his official capacity as Member of the Arkansas State Board of Education; Lisa Hunter, in her official capacity as Member of the Arkansas State Board of Education; Jeff Wood, in his official capacity as Member of the Arkansas State Board of Education; Ken Bragg, in his official capacity as Member of the Arkansas State Board of Education; Leigh S. Keener, in her official capacity as Member of the Arkansas State Board of Education

*Defendants - Appellants*

------------------------------

State of Iowa; State of Florida; State of Idaho; State of Indiana; State of Missouri; State of Montana; State of Nebraska; State of New Hampshire; State of North Dakota; State of South Carolina; State of South Dakota; State of Texas; State of Utah; State of West Virginia

*Amici on Behalf of Appellants*

American Civil Liberties Union; PEN American Center, Inc.; American Civil Liberties Union of Arkansas; American Civil Liberties Union of Minnesota; American Civil Liberties Union of Iowa; American Civil Liberties Union of Nebraska; American Civil Liberties Union of Missouri; American Civil Liberties Union of South Dakota, North Dakota and Wyoming; Arkansas Education Association; National Education Association; Citizens for Arkansas Public Education and Students; Grassroots Arkansas

*Amici on Behalf of Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas

_____

Submitted: April 17, 2025
Filed: July 16, 2025

_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

Two students alleged an Arkansas law violates their rights under the First Amendment's Free Speech Clause because they claim it prohibits their teachers from providing classroom materials and instruction about Critical Race Theory (CRT). Concluding the law likely violated the students' right to receive information, the district court entered a preliminary injunction. The Arkansas officials appeal the preliminary injunction, arguing the Free Speech Clause does not allow students to compel the government to provide certain classroom materials or instruction in its public schools. We agree with the Arkansas officials. The students concede the classroom materials and instruction they seek to receive constitute government speech. This is fatal to their likelihood of success because the government's own speech "is not restricted by the Free Speech Clause," *Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009), so it is free to "choose[] what to say and what

not to say," *Shurtleff v. City of Boston*, 142 S. Ct. 1583, 1589 (2022). Since the Free Speech Clause does not give the students the right to compel the government to say something it does not wish to, they cannot show a likelihood of success. We therefore vacate the preliminary injunction and remand for further proceedings.

## I. Background

In March 2023, Arkansas enacted the LEARNS Act, which amended parts of the Arkansas Code pertaining to early childhood through twelfth grade education. *See* 2023 Ark. Laws Act 237 (S.B. 294). At issue here is part of Section 16 of the LEARNS Act, which is currently codified at Arkansas Code Annotated § 6-16-156.[1] The provision directs the Arkansas Secretary of Education to ensure the Arkansas Department of Education complies with Titles IV and VI of the 1964 Civil Rights Act by reviewing its communications and materials to see if they "promote teaching that would indoctrinate students with ideologies such as Critical Race Theory, otherwise known as 'CRT', that conflict with the principle of equal protection under the law or encourage students to discriminate" based on someone's protected characteristics. Ark. Code Ann. § 6-16-156(a)(1), (2). The Secretary must also "amend, annul, or alter" any "rules, policies, materials, or communications that are considered prohibited indoctrination" and "review and enhance the policies that prevent prohibited indoctrination." *Id.* § 6-16-156(a)(3), (d). "Prohibited indoctrination" is defined as:

---

[1]Section 16 of the LEARNS Act added two sections to the Arkansas Code: § 6-16-156 and § 6-16-157. *See* 2023 Ark. Laws Act 237 (S.B. 294), § 16. Only the portion codified in § 6-16-156 is at issue here. Nevertheless, we refer to the challenged provision as Section 16 because, during the pendency of this appeal, the Arkansas legislature passed a bill that "add[ed] an additional section" to the Arkansas Code, also to be codified at § 6-16-156. *See* 2025 Ark. Laws Act 134 (H.B. 1060). This new bill does not strike any provision of Section 16 from the Arkansas Code. *See id.* Thus, the Arkansas Code currently has two separate laws codified as § 6-16-156. Any citations in this opinion to § 6-16-156 refer to the "Indoctrination" section that was added by Section 16 of the LEARNS Act, not the separate § 6-16-156 entitled "Communism and autocratic government education."

-3-

communication by a public school employee, public school representative, or guest speaker that compels a person to adopt, affirm, or profess an idea in violation of Title IV and Title VI of the Civil Rights Act of 1964, Pub. L. No. 88-352, including that:

(1) People of one color, creed, race, ethnicity, sex, age, marital status, familial status, disability status, religion, national origin, or any other characteristic protected by federal or state law are inherently superior or inferior to people of another color, creed, race, ethnicity, sex, age, marital status, familial status, disability status, religion, national origin, or any other characteristic protected by federal or state law; or

(2) An individual should be discriminated against or receive adverse treatment solely or partly because of the individual's color, creed, race, ethnicity, sex, age, marital status, familial status, disability status, religion, national origin, or any other characteristic protected by federal or state law.

*Id.* § 6-16-156(b). Section 16 expressly excludes from its prohibition: (1) discussions about "[i]deas and the history of concepts described" in the "prohibited indoctrination" definition; and (2) discussions about "[p]ublic policy issues of the day and related ideas that individuals may find unwelcome, disagreeable, or offensive." *Id.* § 6-16-156(c). A teacher who violates Section 16 by engaging in "prohibited indoctrination" "could be punished (up to losing his or her license) by the State Board of Education."

A year after the LEARNS Act was enacted, two high school teachers, two high school students, and the Arkansas state chapter of the NAACP (as an association suing on its members' behalf) filed this lawsuit against the Governor of Arkansas, the Secretary of the Arkansas Department of Education, and various members of the Arkansas State Board of Education (collectively, Arkansas officials), challenging the constitutionality of Section 16. About a month later, they sought a preliminary injunction. In their motion, the teachers argued Section 16 is so vague that it violates the Fourteenth Amendment's Due Process Clause. The students claimed Section 16 violates the Free Speech Clause because it causes their

-4-

teachers to self-censor and therefore fail to provide certain instruction and materials they would otherwise receive.

The district court granted a preliminary injunction to the students but denied one to the teachers. The teachers argued they were forced to self-censor their classroom instruction based on Section 16, but the district court determined the speech they were allegedly censoring was the government's speech, not the teachers', so any chill was not harming their speech rights. Moreover, it concluded the thirteen-month delay from the LEARNS Act's passage to their preliminary injunction motion was unreasonable and showed any harm did not justify relief. As a result, the district court concluded the teachers failed to show an irreparable injury. But, relying on *Pratt v. Independent School District No. 831*, 670 F.2d 771 (8th Cir. 1982), the district court concluded the two students were entitled to a preliminary injunction based on their "right-to-receive-information" claim under the Free Speech Clause. The district court concluded a reasonable teacher may interpret Section 16 to prohibit teaching about CRT and therefore forego providing instruction or materials on the subject out of fear of punishment. Thus, the students demonstrated Section 16 blocked their receipt of information that their teachers previously provided before its enactment. The district court further concluded the Arkansas officials did not show a legitimate pedagogical reason for withholding teaching about CRT, so the students were likely to prevail on their claim.

## II. Analysis

The Arkansas officials appeal the grant of a preliminary injunction to the two students, arguing the instruction and materials the students claim to have a right to receive constituted government speech and therefore the decision to withhold such information is not subject to the Free Speech Clause. The teachers do not cross-appeal the denial of their motion for a preliminary injunction, but the appellees nevertheless argue the injunction can be alternatively upheld based on their vagueness claim.

-5-

"We review the grant of a preliminary injunction for abuse of discretion." *Wilbur-Ellis Co. v. Erikson*, 103 F.4th 1352, 1355 (8th Cir. 2024). "A district court abuses its discretion when 'it rests its conclusions on clearly erroneous factual findings or erroneous legal conclusions.'" *Id.* (quoting *Miller v. Honkamp Krueger Fin. Servs., Inc.*, 9 F.4th 1011, 1013–14 (8th Cir. 2021)). We "consider[] four factors when reviewing a district court's grant of a preliminary injunction: '(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that the movant will succeed on the merits; and (4) the public interest.'" *Id.* at 1355–56 (quoting *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013)). Because a "duly enacted state statute" has been enjoined, the students must show they are "likely to prevail on the merits." *See Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 731–33 (8th Cir. 2008) (en banc).

We conclude the district court erred by granting a preliminary injunction to the students because they are not likely to succeed on their free speech claim. Moreover, we decline to uphold the preliminary injunction based on the teachers' claim given their failure to cross-appeal. We therefore vacate the preliminary injunction and remand for further proceedings. *See Wilbur-Ellis*, 103 F.4th at 1357.

### A. The Students' Right-to-Receive Claim

The students claim Section 16 violates the Free Speech Clause because it has caused their teachers to no longer provide certain materials and instruction on topics that are or may be construed as CRT. They contend the Free Speech Clause provides them with a right to receive information, including course materials, and the Arkansas officials cannot interfere with that right by altering a pre-existing curriculum without a legitimate pedagogical interest untainted by partisan interests. The students agree their right to receive information "does not allow students to dictate what should be included in the school curriculum," except to prevent materials from being removed from the curriculum for improper reasons.

The Free Speech Clause's protection of a speaker's ability to disseminate information includes a reciprocal right to receive that information. *See Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756–57 (1976). Thus, the government cannot skirt the First Amendment by prohibiting a listener from hearing the message of a "willing speaker." *Id.* Such principles do not disappear inside public schools since students and teachers do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969).

But the students sensibly concede the classroom materials and instruction they want to receive constitute the government's own speech. Though a listener's right to receive information means the government cannot stop a willing private speaker from disseminating his message, that right cannot be used to require the government to provide a message it no longer is willing to say. *Little v. Llano County*, 138 F.4th 834, 842–47 (5th Cir. 2025) (en banc). After all, "[w]hen the government wishes to state an opinion, to speak for the community, to formulate policies, or to implement programs, it naturally chooses what to say and what not to say," unrestrained by the Free Speech Clause. *Shurtleff*, 142 S. Ct. at 1589. The government is ultimately accountable to its citizens for its speech through elections, so the government may change the message it promotes in response to the political process. *See Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015); *Bd. of Regents of Univ. of Wisc. Sys. v. Southworth*, 529 U.S. 217, 235 (2000).

Students do not possess a supercharged right to receive information in public schools that alters these principles. Just as ordinary citizens cannot require the government to express a certain viewpoint or maintain a prior message, students cannot oblige the government to maintain a particular curriculum or offer certain materials in that curriculum based on the Free Speech Clause. *See Southworth*, 529 U.S. at 235; *Walker*, 576 U.S. at 219. *See also Griswold v. Driscoll*, 616 F.3d 53, 58–60 (1st Cir. 2010) (Souter, J.) (concluding that revising curricular materials, "even if made in response to political pressure, did not implicate the First Amendment"); *Edwards v. Cal. Univ. of Pa.*, 156 F.3d 488, 491–92 (3d Cir. 1998)

(Alito, J.) ("[T]he First Amendment does not place restrictions on a public university's ability to control its curriculum . . . ."); *Boring v. Buncombe Cnty. Bd. of Educ.*, 136 F.3d 364, 370–71 (4th Cir. 1998) (en banc) (recognizing that a teacher plaintiff "had no First Amendment right to insist on the makeup of the curriculum"); *Chiras v. Miller*, 432 F.3d 606, 618–20 (5th Cir. 2005) (concluding "the selection of curricular materials by the [State] Board [of Education] is clearly government speech" so "students have no constitutional right to compel the Board" to allow use of certain textbooks); *Mayer v. Monroe Cnty. Cmty. Sch. Corp.*, 474 F.3d 477, 479–80 (7th Cir. 2007) (rejecting a teacher's claim that she had a First Amendment right to "depart from the curriculum adopted by the school system"). *But see Arce v. Douglas*, 793 F.3d 968, 983 (9th Cir. 2015) ("[T]he state may not remove materials otherwise available in a local classroom unless its actions are reasonably related to legitimate pedagogical concerns.").

The students nevertheless argue the government does not have an absolute right to determine what is removed from the curriculum because government speech is not immune from all constitutional constraints and the school context raises particular concern for academic freedom. As to the argument that the Constitution limits government speech, we agree in part. Government speech is not immune from all constitutional challenges, and our holding does not suggest otherwise. The Establishment Clause, for example, limits government speech. *Summum*, 555 U.S. at 468. Other constitutional provisions may constrain government speech as well, but the Free Speech Clause is not one of them. *See id.* at 467–68 ("The Free Speech Clause . . . does not regulate government speech."). The Free Speech Clause does create a right to receive information. *See Va. State Bd. of Pharm.*, 425 U.S. at 756–57. But, as a right housed within a clause that does not regulate the government's own speech, the right to receive information cannot constrain the government's ability to decide what to say and what not to say. *See Summum*, 555 U.S. at 467.

Regarding academic freedom, the students largely rely on *Pratt* and *Board of Education, Island Trees Union Free School District No. 26 v. Pico*, 457 U.S. 853 (1982). *Pico*, which dealt with a school board's decision to remove certain books

-8-

from school libraries, is of little help to their cause. *See Pico*, 457 U.S. at 855–56 (plurality opinion). Under the *Marks* rule, *Pico* lacks any holding as to the First Amendment because the narrowest grounds for the judgment was the opinion of Justice White who declined to decide any constitutional questions. *See Pico*, 457 U.S. at 883–84 (White, J., concurring in the judgment); *Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" (quotation omitted)). Even considering the persuasive value of the principal plurality opinion which concluded students had a right to receive books previously added to a school library, it distinguished the school library from the classroom and recognized that the government has a "claim of absolute discretion in matters of *curriculum*" and "the compulsory environment of the classroom" to carry out its "duty to inculcate community values." *Pico*, 457 U.S. at 862, 868–69, 872 (plurality opinion). The other *Pico* opinions that discussed the First Amendment's Free Speech Clause also cast doubt on the Clause's role as a check on curriculum choices. *See id.* at 878 & n.1 (Blackman, J., concurring in part and in the judgment); *id.* at 889–91 (Burger, C.J., dissenting); *id.* at 893, 895 (Powell, J., dissenting); *id.* at 909–15 (Rehnquist, J., dissenting); *id.* at 921 (O'Connor, J., dissenting). Here, we deal not with books in a library, but instead with in-classroom instruction and materials in a high school. If *Pico* is any guide, Arkansas has substantial, if not absolute, discretion in selecting what materials and information to provide in its public school classrooms. *See id.* at 862, 869 (plurality opinion); *id.* at 889–91 (Burger, C.J., dissenting).

*Pratt* is closer to the present case. There, we concluded "school boards do not have an absolute right to remove materials from the curriculum" if the removal "was intended to suppress the ideas expressed" in the removed materials. *Pratt*, 670 F.2d at 776. If students showed material was removed for that reason, the government had to "establish that a substantial and reasonable governmental interest exists for interfering with the students' right to receive information." *Id.* at 777. Thus, we held the school board violated the students' right to receive information when it

-9-

removed the film, "The Lottery," from the curriculum based on concerns about the film's effect "on the religious and family values of students" and failed to show a substantial interest for removing it. *Id.* at 774, 779.

The district court here concluded *Pratt* prevented it from applying the established principles that the Free Speech Clause does not allow an individual to compel the government to provide a particular message. We are not so bound.[2] "Although one panel of this court ordinarily cannot overrule another panel, this rule does not apply when the earlier panel decision is cast into doubt by a decision of the Supreme Court." *United States v. Williams*, 537 F.3d 969, 975 (8th Cir. 2008) (emphasis omitted) (quoting *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 838 (8th Cir. 1997)). *Pratt*, which was decided in 1982, predates the numerous Supreme Court decisions holding that the government is permitted to engage in viewpoint discrimination when it speaks. *See, e.g.*, *Summum*, 555 U.S. at 467–68 (collecting cases establishing that the Free Speech Clause "does not regulate government speech"). Since *Pratt*, the Supreme Court has instructed that a court must consider "principles applicable to government speech" when the issue involves "speech by an instructor or a professor in the academic context." *Southworth*, 529 U.S. at 235. *See also Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 833 (2000) ("When the University determines the content of the education it provides, it is the university speaking, and we have permitted the government to regulate the content of what is or is not expressed when it is the speaker or when it enlists private entities to convey its own message."). The present case deals directly with such in-classroom instructional speech, as all parties agree. *Pratt* omitted the crucial step of considering whether the speech at issue was the government's and therefore not subject to the Free Speech Clause's restrictions. Indeed, its test resembles the one applied to the government's regulation of *student* speech in school-sponsored settings. *See Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273 (1988). We

---

[2]As it later recognized when addressing the defendants' subsequent motion to dismiss, the district court also was not bound to apply *Pratt* once it had been "cast into doubt by a decision of the Supreme Court." *See United States v. Steward*, 598 F.3d 960, 962 (8th Cir. 2010).

-10-

have not reaffirmed *Pratt*'s application to a Free Speech Clause challenge since the proliferation of the government speech doctrine.[3] In similar circumstances where subsequent Supreme Court cases have demonstrated that our earlier panel decision engaged in "only half of the analysis" required to address the issue, we concluded we were not bound to reach the same result as our prior precedent. *See Williams*, 537 F.3d at 972, 975.

Despite the clear incompatibility of *Pratt*'s imposition of a viewpoint discrimination limitation and the Supreme Court's government speech doctrine, the students argue we should still follow it in the narrow circumstance where the government is alleged to have changed a pre-existing curriculum for "partisan or political" reasons. But "virtually all educational decisions necessarily involve 'political' determinations," *Pico*, 457 U.S. at 890 (Burger, C.J., dissenting), so any time something is removed from the curriculum based on the decision of a democratically elected government entity, it could be characterized as a "partisan or political" choice. We see no basis in the Free Speech Clause to conclude the students would have a right to prevent something from being removed from the curriculum based on ideology if they do not also have a right to require the school to add materials. And the students reasonably concede they lack the latter right. Given that this asserted right only runs in one direction, the students' proposition would create an incumbency bias that erodes democratic accountability for government speech. Any time the government seeks to alter the curriculum by removing materials, it would face potential challenges that it is doing so for perceived ideological reasons. By applying this test only when materials are removed, we essentially assume that the preexisting curriculum reflects some neutral ideal. If the removed materials were added to the curriculum for "partisan or political" reasons, future governments should surely be free to remove those materials to reflect new priorities based on

---

[3] Indeed, we have only ever cited *Pratt* twice, and neither addressed a free speech challenge to government speech. *See Stanley v. Magrath*, 719 F.2d 279, 280, 283 (8th Cir. 1983) (referencing *Pratt* in a case involving censorship of a student newspaper); *Stark v. Indep. Sch. Dist., No. 640*, 123 F.3d 1068, 1073–74 (8th Cir. 1997) (citing *Pratt* for an Establishment Clause challenge).

voters' wishes. Nevertheless, under the students' proposed rule, the government is stuck with those materials unless it can sufficiently convince a court that it is removing them for non-ideological reasons. And removing materials because those materials were added to promote "partisan interests" could itself be classified as suppressing a particular ideological viewpoint from the classroom and therefore an improper ideological motivation for modifying the curriculum.[4]

Ultimately, if we followed the students' approach, a government could not successfully defend its decision to change the curriculum by arguing that it was responding to the electorate and the political process. Such an outcome runs headlong into the Supreme Court's government speech cases, which repeatedly emphasize the role of the political process and elections in regulating government speech. *E.g.*, *Summum*, 555 U.S. at 468–69; *Shurtleff*, 142 S. Ct. at 1589; *Southworth*, 529 U.S. at 235. Typically, "[i]f the citizenry objects, newly elected officials later could espouse some different or contrary position." *Southworth*, 529 U.S. at 235. Thus, we usually permit changes in government speech motivated by the political process, rather than declare them unconstitutional. It would be odd to treat government speech in schools differently since "the education of the Nation's youth is primarily the responsibility of parents, teachers, and state and local school officials, and not of federal judges." *Hazelwood Sch. Dist.*, 484 U.S. at 273. We decline the students' invitation to make the school curriculum uniquely static and

---

[4]Indeed, this case suggests how such an explanation would likely result in litigation. While the Arkansas officials dispute that Section 16 prohibits teaching about CRT, their brief argues they could remove such materials even under the students' test because the materials promote an "ideolog[y] that . . . urg[es] openly race-based policies" — in other words, they view teaching about CRT as inculcating a certain ideological position. *Accord* Ark. Code Ann. § 6-16-156(a)(2) (addressing "teaching that would indoctrinate students with ideologies such as [CRT] that conflict with the principle of equal protection under the law or encourage students to discriminate against someone based on the individual's [protected characteristic]"). The students meanwhile cite this justification as an improper partisan basis for removing materials.

Appellate Case: 24-1990    Page: 12    Date Filed: 07/16/2025 Entry ID: 5537614

unaccountable. We therefore conclude that *Pratt*'s test has been abrogated by the Supreme Court.

We do not minimize the students' concern — whether in this case or in the abstract — about a government that decides to exercise its discretion over the public school curriculum by prioritizing ideological interests over educational ones. But the Constitution does not give courts the power to block government action based on mere policy disagreements. The right to receive information cited by the students in support of the preliminary injunction does not authorize a court to require the government to retain certain materials or instruction in the curriculum of its primary and secondary public schools, even if such information was removed for political reasons. Since the speech belongs to the government, it gets to control what it says. We therefore conclude the students are unlikely to succeed on the merits of their right-to-receive claim and should not have been granted a preliminary injunction.

### B. The Teachers' Vagueness Claim

The appellees argue that we should alternatively affirm the preliminary injunction based on the teachers' vagueness claim. The district court denied the teachers' motion after concluding they failed to show irreparable harm because they lacked a personal interest in their in-classroom instructional speech and had unreasonably delayed in seeking relief. We decline to assess the preliminary injunction based on the teachers' vagueness claim because they failed to file a cross-appeal.

Since the district court granted an injunction only to the students, the teachers needed to file a cross-appeal to preserve their ability to seek a preliminary injunction on their claim on appeal. Without a cross-appeal, an appellee may argue in support of affirming the district court's judgment even if "his argument may involve an attack upon the reasoning of the lower court," but he "may not 'attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary.'" *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 479 (1999)

-13-

(quoting *United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435 (1924)). Under this cross-appeal rule, "an appellate court may not alter a judgment to benefit a nonappealing party." *Greenlaw v. United States*, 554 U.S. 237, 244 (2008). If we relied on the teachers' claim to retain the injunction that was granted to the students but that was denied to the teachers, we would enlarge the teachers' rights against the Arkansas officials. To be sure, the scope of the injunction covered the two teacher-plaintiffs to facilitate the students' ability to receive the sought information and materials. But no relief was awarded to the teachers by the district court. This is not a situation where a party who received relief seeks to sustain that relief on an alternative basis. Instead, one set of plaintiffs asks for an injunction awarded to a different set of plaintiffs to be given to them. Just as we would not affirm a damages award given to one plaintiff by concluding a different plaintiff who did not appeal would be entitled to those funds, we will not uphold the preliminary injunction here based on the claim of the parties who lost below and did not appeal.

### III. Conclusion

In light of the foregoing, we vacate the preliminary injunction and remand for further proceedings.

_____

Appellate Case: 24-1990     Page: 14     Date Filed: 07/16/2025 Entry ID: 5537614